HENRY CHAPIN, Judge of Probate, *vs.* RICHARD WATERS.

Worcester.    October 6. — 22, 1874.    COLT & MORTON, JJ., absent.

Where a testator charges the payment of pecuniary legacies upon his real estate, and directs that they shall be paid by A. and B., and then devises one part of his real estate in trust for B. during his life, with remainder to his children, and the other part to A. in fee, as residuary devisee and legatee, the legacies must be paid by A. and B. in equal proportions; and if there is sufficient personal prop erty in the hands of the executor to pay the testator's debts and A.'s proportior of the legacies, he cannot rightfully sell any part of the real estate devised to A.

If during the lifetime of a devisee the real estate devised to him is unlawfully solq by the executor, his heirs are not entitled to an execution under the Gen. Sts

c. 101, § 28, in a suit brought, in the name of the judge of probate, on the bond of the executor, but it must be applied for and issue to his administrator.

Land devised to A. was mortgaged by him, with other property, and was afterwards unlawfully sold by the executor of the devisor for the payment of debts. After this the mortgage was foreclosed, and the other property was not sufficient to pay the mortgage debt. *Held*, in a suit on the executor's bond, that the amount to be deducted from the value of the land sold was the difference between the mortgage debt and the value of the other property, and not the proportion of the mortgage debt which the land sold bore to the other property.

A devisee of land made a mortgage of it which was fraudulent as to creditors, and died. Subsequently the executor of the devisor, for the purpose of defeating the mortgage and for the benefit of the heirs of the devisee, except one who refused to assent to the transaction, sold the land by a license from the Probate Court as for the payment of the debts of the devisor. The sale was unlawful, and the executor never received anything on it. In an action by the judge of probate on the executor's bond, for the benefit of the heir who did not assent to the sale, it was *held* that the interest for which the executor was liable was simple interest only from the time of the sale.

CONTRACT brought for the benefit of Mary M. Titus, on a joint and several bond to the judge of probate executed by Lewis Torrey as principal, and the defendant and Dexter Putnam as sureties, conditioned that Torrey, who had been appointed executor of the will of John Titus, Sen., should faithfully administer the estate of the testator.

After the former decision, 110 Mass. 195, the case was sent to an assessor, to ascertain and report to the court the amount of damages sustained by Mary M. Titus, and the value of her interest in the estate sold, at the time of the sale and in the condition in which it then was. On the coming in of the assessor's report the plaintiff moved that execution should issue for the benefit of Mary M. Titus, for the sum of $1367.72, and his costs; and the defendant filed certain exceptions to the report. The case was reserved by *Wells*, J., for the consideration and determination of the full court, upon the plaintiff's motion, the assessor's report, the defendant's exceptions thereto, and so much of the report of the case at the former hearing, and of the will and other accompanying documents, as either party deemed material and desired to refer to, and appeared to be as follows :

John Titus, Sen., died in 1851, leaving a will, which was duly proved, and by which he devised certain real estate to his son John Titus, Jr., and appointed Torrey executor. Letters testamentary were issued to Torrey, and he gave the bond in suit.

The executor, in April, 1853, in pursuance of a license from the Probate Court, sold part of the real estate which had been devised to John Titus, Jr., for the payment of debts and legacies.

On January 4, 1854, John Titus, Jr., made a mortgage of all his real and personal estate to James T. Howard, which was fraudulent as to creditors ; and he died in September, 1854, intestate, leaving Mary M. Titus, who was of age, and two other children, his heirs at law.

The executor of John Titus, Sen., in December, 1854, in pursuance of a license from the Probate Court, for the payment of debts and legacies, sold to Obadiah Morse some more of the real estate which had been devised to John Titus, Jr., and executed and delivered a deed to the purchaser. Both of these sales were unlawful, the executor having sufficient assets to pay all debts and legacies.

This second sale was made for the purpose of defeating the mortgage to Howard and for the benefit of the heirs of John Titus, Jr., except Mary M. Titus, who refused to assent to the transaction or to have anything to do with it. The executor never received anything on this sale, and has never rendered any account. An entry to foreclose the mortgage was made January 25, 1855, and on August 31, 1858, it was sold and assigned to Morse, who now claims to hold the land under the foreclosure.

The material clauses in the will of John Titus, Sen., are as follows :

" I give to my daughters Betsey Torrey and Seraphina Morse, the sum of five hundred dollars to each of them, to hold to them, their heirs and assigns forever."

" It is my will that two third parts of the legacies hereinbefore given to my said daughters be paid by my said sons John and Henry, immediately after my decease, and the remaining third part of said legacies to be paid by said John and Henry immediately upon the decease of my said wife, and interest after payable, and hereby charge my real estate with the payment of said legacies."

" I give, devise and bequeath unto my son John Titus, Jr., one undivided sixth part of my Waters wood lot and one undivided third part of my McKnight lot lying west of and adjoining Manchaug Pond, and the two first following described tracts of land

to hold the said two tracts of land and said undivided third part of said McKnight lot and the undivided sixth part of said Waters lot, in trust for the especial use and benefit of my son Henry and his wife Mary, during their lives and the longest liver of them, and at the decease of the survivor of them. It is my will and I give and devise the same to all the children then living of my said son Henry and begotten by him, the males to take two dollars each as often as the females do one dollar each, at the appraisal of men ; to hold to them, their heirs and assigns forever."

" I give, devise and bequeath all the rest and residue of my estate, real, personal and mixed, to my son John Titus, Jr., (excepting and reserving one undivided fourth part of all my buildings with the privileges thereto, which it is my will that my son John shall hold in trust for the use and benefit of my son Henry and his wife Mary and their family, during the lives of said Henry and Mary and the survivor of them, and for the use and occupancy of no other person whatsoever."

The assessor ruled that, even if the language of the will did not make the legacies to Betsey Torrey and Seraphina Morse a specific charge upon the real estate devised for the benefit of Henry and John, Jr., equally, and to be paid by them out of said real estate, and not by the executor out of the personal property, yet that one half the amount of them was a charge upon the estate devised in trust for Henry, there being no other real estate of Henry to which the language of the will could have applied, and that the whole could not be legally taken out of the personal property which went to John Titus, Jr., as residuary legatee.

The assessor also found that, at the time of the first sale, there was personal property available for the payment of debts and legacies, (including a note omitted to be accounted for by the executor,) to the amount of $1117.65, and that the debts and legacies at that time were $818.23, taking in this estimate one third of the legacies to be due, one third being payable from the estate of Henry Titus, and one third not till after the death of John Titus's widow, leaving a balance of $299.42. He also found that at the time of the second sale this balance would have been left, and the legacies and expenses to be paid out of it as follows : One sixth of legacies to Betsey Torrey and Seraphina Morse, (two thirds having been paid, and one sixth being payable from

the estate of Henry Titus,) with interest from December, 1853, the time of the death of the widow of John Titus, Sen., $177.49, which sum, with a balance of charges of administration, amounted to $227.49 ; that the sales were unnecessary, and that the damage sustained by Mary M. Titus was the full value of one third of the land of John Titus, Jr., sold at the first sale, and the value of one third of all of his land sold at the second, subject to the mortgage to Howard before mentioned, which the assessor found was given for a legal consideration ; that the total value of the land sold at the second sale, belonging to John Titus, Jr., was $1133.06. This, however, with other property amounting to $1563.80, was subject to the mortgage to Howard of $1912.20, which had been foreclosed ; and the assessor estimated the difference between these two sums, viz : $348.40, as the amount of the incumbrance on the land sold ; and deducting this from $1133.06, the amount left viz., $784.66, represented the damage to the heirs of John Titus, Jr., and one third of the damage to the interest of Mary M. Titus. This sum, with simple interest, amounted to $568.87. The plaintiff contended that interest should be allowed with annual rests, which claim the assessor disallowed.

The defendant contended that the plaintiff had no claim for damages under the first sale, because John Titus, Jr., was then alive.

The assessor also reported that the evidence showed no property of Henry Titus except that left for his benefit by the will, and tended to show that he had no other ; and that the share devised in trust for Henry was amply sufficient to pay one half of the legacies to Betsey Torrey and Seraphina Morse.

The defendant, for the purpose of proving that there were other debts against the estate of John Titus, Sen., which were paid by his executor, offered as evidence before the assessor certain papers purporting to be bills against said estate, and to have been paid by said executor, and amounting in the aggregate to $150, which were in the possession of the wife of the defendant, who is also the daughter of the executor, and who testified that they were placed in her hands by her father ; but this method of proof was objected to by the plaintiff, and was rejected by the assessor.

The assessor reported as the whole damage sustained by Mary M. Titus, if interest snall be allowed by the court with annual rests, the sum, including such interest, of $1367.72; and if only simple interest shall be allowed, the sum, including such interest, of $917.43.

The defendant filed the following exceptions to the assessor's report:

"1. That in estimating the property of John Titus, Sen., charged with the payment of debts and legacies, that portion specifically devised in trust for his son Henry and wife for life, with remainder to his children, ought not to have been included.

"2. No interest, either simple or with annual rests, should have been allowed, prior to the date of the writ in this case.

"3. As the legacies to Seraphina Morse and Betsey Torrey are made chargeable by the will upon the real estate, the personal property is exempted from the payment of any portion of them, and the assessor has erred in marshalling the value of the personal property among the assets for their payment.

"4. As the assessor has found that all of the real estate belonging to John Titus, Jr., sold at the second sale, was of the value of $1133.06, and was incumbered by a mortgage of $1912.20, he has erred in reducing the amount of that incumbrance by estimating and deducting therefrom the value of other property included in the mortgage, and treating the remainder only as the real incumbrance upon that property.

"5. In any event, only the value of Henry's life estate in the property specifically devised to his children can be marshalled among the assets for the payment of said legacies."

. *T. G. Kent*, for the plaintiff.

*G. F. Verry*, for the defendant.

WELLS, J. We are of opinion that the assessor decided rightly that the legacies which the testator directed to be paid by his sons John and Henry were intended to be paid one half by each . and that, in charging the payment upon his real estate, it was intended to charge one half upon the lands devised to each, if suffi- cient therefor, without regard to the proportion of value of the two devises. The fact that one devise was specific and the other residuary tends to strengthen this inference from the language directing the payment.

The charge is upon the land, and not upon the limited interest which Henry took under the will. The land devised to Henry and his wife and children being of more than sufficient value to satisfy one half of the legacies, the other half only was treated as chargeable to John's interest. The assessor has in no other way included the property devised to Henry in his estimates. The exceptions to his report in this particular must therefore be overruled.

It is contended that, by the charge upon the real estate, the personal property was exempted from liability for payment of the legacies, and therefore that the real estate was properly sold for their payment. If this were so, it would not justify any sale beyond what was necessary for payment of the legacies. All the debts should have been paid from the personal assets; and if the note had been properly accounted for, those would have been more than sufficient. The greater part of the amount of liability, for which the second sale was authorized, was improperly made up, even if this position of the defendant is sustained.

But we are of opinion that the charge of the legacies upon the real estate did not, of itself, require the executor to sell land devised to John, while he held personal assets that were embraced in the same residuary bequest to him; much less did it justify him in doing so while retaining those assets in his own hands without accounting for them. A general charge by a testator upon his lands does not change the order in which the assets are to be applied, unless there is something further to indicate his purpose that the personal estate, or some specific portion of his property, shall be exempt from liability for the debt or legacy so charged. It is the direction that Henry should pay, in addition to the charge on the land, that shows the intention that the residue of the estate should be relieved of liability for one half of the legacies. But no such inference arises in regard to the separate portions of the residue bequeathed to John. The charge upon the real estate gives to the legatee a lien for payment of the legacy, and a priority in case that fund should be resorted to. But neither that general charge, nor the direction that John should pay, shows that he or the executor was required to pay from the real estate for the exemption of the personal property given to John himself, and furnishes no justification for the fail

ure of the executor to account for all the personal assets before proceeding to sell the realty.

The defendant insists that Mary M. Titus has no claim for damages under the first sale, because her father, John Titus, Jr., was living at that time, so that the damages were due to him, and belonged to his estate as personal assets at his death, and did not descend with the realty. This position we think must be sustained. *Moore* v. *Boston*, 8 Cush. 274. If any damage resulted from that sale, the execution therefor must be applied for and issue to the administrator of John Titus, Jr. The point was not decided, and was not specially considered in the former judgment.

In this aspect of the case, the exclusion by the master of certain evidence offered to prove additional debts of John Titus, Sen., paid by the executor, to the amount of $150, becomes immaterial.

In determining the value of the interest of Mary M. Titus in the lands sold, which is the measure of her damages, the assessor was obliged to estimate the effect of the incumbrance of a mortgage given by John Titus, Jr., covering all his property, real and personal. The mortgage had been foreclosed. The mortgage debt was less than the value of the whole property, but exceeded the value of all that was not sold by the executor. Of course, the sale defeated the redemption by destroying the value of the right to redeem. The damages for this loss are less than the value of the lands sold, by just so much as would have been required to be paid, beyond the value of that which the mortgagee holds by his foreclosure, in order to have redeemed the whole. The assessor proceeded upon this principle ; and his mode of estimating the damages in this particular was entirely correct. The heirs could not have redeemed any part without paying the entire mortgage debt. It would be unjust, therefore, in this proceeding, to estimate the value of their rights in each separate part by apportioning the mortgage *pro rata.* The mortgage debt is in fact paid, to the extent of the value of the property upon which the foreclosure has been operative.

The only other question requiring our decision is that in relation to the claim for interest. It is not a case where funds have been used by an executor that ought to have been invested ; or

income withheld that ought to have been paid over or reinvested. The conduct of the executor was wrongful, but it was waste merely. Mary M. Titus might have brought her suit at any time, if she had chosen to do so. The facts were patent. She is not entitled to impose upon the defendant, as the consequence of her own delay, any penalty beyond simple interest.

Execution is therefore awarded for the use of Mary M. Titus, for the amount reported by the assessor as her damages occasioned by the second sale, with simple interest from the date of the sale, and costs of the suit.